UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff, CR. NO. 26-20634

v. Hon. Denise Page Hood

MOHAMD SALIM ABDESSAMED,

Defendant.

---

**DEFENDANT'S URGENT MOTION FOR A PRESERVATION ORDER**

***EXPEDITED CONSIDERATION REQUESTED***

---

The relief requested in this motion is so fundamental, a motion should not be necessary. Mohamd Abdessamed has asked the government to preserve key evidence in the case since June. Multiple times now, the government has ignored or, worse, taken opposite measures, in the face of those requests. It does so again here.

Mr. Abdessamed, through counsel Amanda Bashi and Daniel Dena, asks the Court to order the government to: remove from active service the two remaining ICE vehicles from the June 4 incident, make no further modifications or repairs, and preserve the electronic vehicle data. The government opposes. *See* L.R. 7.1(a).

Given that either vehicle could be in another accident any day, Mr. Abdessamed asks for expedited briefing and consideration of this request.

**BRIEF IN SUPPORT OF MOTION**

The government charges Mr. Abdessamed with assaulting three ICE officers—J.B., A.R., and J.M.—by striking their vehicles with a dangerous weapon, namely his Chevrolet Malibu. Mr. Abdessamed says ICE's unmarked cars boxed him in and hit his car first. The damage to each vehicle, and the crash data stored in each vehicle's airbag module, are objective evidence of what actually happened and in what order. (*Id.* at PageID.52; ECF No. 24-9, ¶¶ 30, 35, PageID.364–66.) Not to mention, according to the government, the Malibu itself *was* the dangerous assault weapon. (*See* Complaint, ECF No. 1.)

Two of those four key pieces of evidence are already gone. The Detroit Police Department sold the Malibu at auction on August 4, 2026, and on October 7 the government disclosed that the vehicle driven by J.B. "was surplussed." (ECF No. 24, PageID.52, 62.) What remains are the other two government vehicles involved (the "Remaining Vehicles").

Unfortunately, the Remaining Vehicles have also not been preserved. On October 14, 2026, members of the defense team viewed the Remaining Vehicles. The following day, October 15, the government made its first (so far, it's only) discovery production, which consisted mostly of photos taken by DPD at the June 4 scene. In comparing the evidence viewing with the DPD photos, the defense learned the following: that both vehicles remain in operation and in the field for ICE agent use since June 4 and have been serviced; that one of the vehicles had material alterations;

that one of the vehicles has been in at least one additional accident; and that the damage to both vehicles does not appear as it did immediately after the June 4 incident.

The defense asked the government to agree to preserve the Remaining Vehicles by removing them from active service, lest further evidence in this case is spoiled. The government refuses.

It appears necessary to state the obvious: the evidence in and on these vehicles is perishable. (See Motion to Dismiss, ECF No. 24.) Every day the Remaining Vehicles stay in service puts the evidence at risk. Each start adds an ignition cycle, and a further collision, a repair, or a replaced part can erase stored data and physical damage alike. (*Id.* ¶¶ 21, 41, PageID.361–62, 367.) The defense cannot know whether the June 4 data survived four months of field use. It can only ask that the vehicles stop being used before more is lost. If either vehicle were damaged, totaled, or surplussed tomorrow, the defense would further lose the last of the government vehicles in the charged collisions.

A well-regarded crash reconstruction expert, Timothy Brown, explains that most modern passenger vehicles have an event data recorder built into the airbag control module. (ECF No. 24-9, ¶ 15, PageID.360.) "Data from a non-deployment event is not necessarily permanent. Depending on the manufacturer and the module, it can be overwritten by a later event or cleared after a number of ignition cycles. EDR data can also be lost if the module is damaged, removed, or replaced, for example during repair or salvage." (*Id.* ¶ 21, PageID.361–62.) Accepted practice is to download each involved

vehicle's data and document its damage "before the vehicles are released, repaired, or disposed of." (*Id.* ¶ 32, PageID.364–65; *see id.* ¶ 42, PageID.368.) The government has not answered whether this has occurred in this case.

## ARGUMENT

### I. The Court may order the government to preserve evidence it controls and that the defense is entitled to inspect.

Rule 16 entitles a defendant to inspect tangible objects within the government's "possession, custody, or control" that are material to preparing the defense. Fed. R. Crim. P. 16(a)(1)(E). In a case charging use of a vehicle as a weapon, where it is alleged that multiple vehicles were struck, the vehicles clear that threshold easily. (ECF No. 24, PageID.75.) And "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). An order that keeps discoverable evidence in a condition in which it can still be inspected is "other appropriate relief." The Court also has inherent authority "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)), and the Due Process Clause guarantees Mr. Abdessamed "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984).

Courts deciding whether to order preservation weigh (1) their level of concern that the evidence will not survive without an order, (2) the irreparable harm the movant

is likely to suffer without one, and (3) the other party's capacity to maintain the evidence, including the burden of doing so. *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433–34 (W.D. Pa. 2004). Each factor favors an order here.

## II. Each factor favors preservation.

### A. The integrity of the Remaining Vehicles is at real risk.

This concern is not hypothetical. First, the government has already disposed of two of the four vehicles involved. The defense has asked the Court to dismiss the case on that basis. (ECF No. 24.) Second, the government admits that the Remaining Vehicles are in active service, admits one of them has had material alterations made, and the other vehicle itself shows clear damage that was not present on June 4. In other words, the Remaining Vehicles are already spoiling evidence. None of the defense's concerns are hypothetical.

Third, the defense just seeks to stop the spoliation that the government is already openly permitting. The crash reconstruction expert explains that stored data can be overwritten, cleared, or lost, and that physical damage changes with repair, exposure, and of course further damage. (ECF No. 24-9, ¶¶ 21, 41, PageID.361–62, 367.) The government knows this. The government's case agent was present both at the June 4 scene and at the October 14 evidence viewing. She provided the receipts for the auto work done to add lights and sirens to one of the Remaining Vehicles where it did not

have them previously,[1] and it was plainly visible as of October 14 that one of the Remaining Vehicles had sustained clear accident damage after June 4. The defense awaits further disclosures as to the "surplussed" vehicle.

Finally, most obviously, either vehicle could be damaged or totaled any day it remains in active service.

### B. Without an order, the harm to Mr. Abdessamed would be irreparable.

The key question at trial will be which vehicle struck first, i.e., who was the aggressor? The best evidence is the damage on each vehicle and the data in each airbag module. Photographs are not a simple substitute. They cannot retrieve electronic data. They do not adequately capture crush depth, paint transfer, or hidden damage. (ECF No. 24-9, ¶¶ 39–40, PageID.367; ECF No. 24, PageID.71.) Because reconstruction largely depends on matching the damage on one vehicle to the damage on the other, failing to preserve any vehicle limits what an expert can say. (ECF No. 24-9, ¶¶ 37–39, PageID.366–67.) No later order can restore overwritten data or undo further damage.

### C. The burden on the government is slight, and the order is temporary.

The government has the two remaining vehicles. It made them available for viewing. Preserving them means parking them, leaving them alone, and keeping the related records. The order sought is temporary and tailored: it lasts only until the

[1] Whether the ICE vehicles in this case had lights/sirens has been a heavily disputed issue since immediately after the incident occurred.

vehicles are inspected, documented, and their data downloaded in a joint, non-destructive process, after which the government may seek modification. Any inconvenience is small next to the risk of totally losing the last vehicles at issue in a serious felony prosecution.

## CONCLUSION

Mr. Abdessamed asks the Court to enter the attached proposed order, which would: (a) take the Remaining Vehicles, and any other government vehicle that took part in the June 4 stop, out of service and keep them in their present condition and in the government's custody; (b) bar anyone from downloading, clearing, or altering the vehicles' electronic data except in a joint, documented download; (c) require the government to preserve the vehicles' service, maintenance, repair, fleet, GPS, and telematics records from June 4; (d) direct a joint, non-destructive inspection and data download within 14 days; (e) require the government, within 3 days, to file a declaration identifying each vehicle, where it is, and what has been done to or with it since June 4; and (f) remain in place until the Court orders otherwise, with leave for the government to seek modification once the inspection and download are complete.

Because any further use, repair, or disposal of the Remaining Vehicles could moot this motion, Mr. Abdessamed asks for expedited consideration and for an interim order, pending a hearing, that the vehicles not be operated, repaired, altered, or disposed of.

Dated: October 23, 2026

Respectfully Submitted,

**FEDERAL COMMUNITY DEFENDER**

s/ Amanda Bashi & Daniel Dena
Attorneys for Mohamd Abdessamed
613 Abbott Street, Suite 500
Detroit, Michigan 48226
313-967-5542

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system that will send notification of such filing to all registered parties.

/s/ Amanda Bashi
Attorney